**MORGAN COMMUNITY COLLEGE,**
**Plaintiff–Appellant,**

v.

**Richard RILEY, Secretary of the United States Department of Education,**
**Defendant–Appellee.**

**Civil Action No. 96–K–1904.**

United States District Court,
D. Colorado.

July 18, 1997.

Robin R. Rossenfeld, Assistant Attorney General, General Legal Services Section, Denver, CO, for Plaintiff/Appellant.

Robert D. Clark, Assistant U.S. Attorney, Denver, CO, Sarah L. Wanner, Office of General Counsel, U.S. Dept. of Education, Washington, DC, for Defendant/Appellee.

## MEMORANDUM DECISION ON APPEAL

KANE, District Judge.

Morgan Community College ("Morgan"), a two-year public community college located in Fort Morgan, Colorado, appeals the decision of the Secretary of the Department of Education ("Secretary") upholding the initial decision of the Department's administrative law judge ("ALJ"). The Secretary's decision is a *pro forma* adoption of the ALJ's decision. I affirm.

### I. *The ALJ's Decision.*

The ALJ found that from January 1991 until June 30, 1994, Morgan provided a complete educational program at the Limon Correctional Facility ("Limon"). He concluded this program was not part of the eligibility determination made by the Department of Education ("Department") in deciding that Morgan was eligible to participate in the federal student financial assistance program authorized under Title IV of the Higher Education Act of 1965, as amended, and that Morgan did not notify the Department of its operation of the additional location at Limon as required by 34 C.F.R. §§ 600.30 (1991, 1992, 1993) and 600.32 (1992, 1993). Accordingly, the ALJ found all federal financial assistance awarded by Morgan to students attending courses at Limon was unauthorized and ordered Morgan to reimburse the Department in an amount of $380,417.00, representing all Pell Grants awarded by Morgan to students attending the unauthorized program at Limon.

The ALJ also found Morgan had violated the regulations concerning written agreements between eligible schools and ineligible organizations by contracting out the operation of virtually its entire truck-driving program to the Sage Corp. of Pennsylvania in violation of 34 C.F.R. § 600.9(d) (1993). The ALJ found all federal student financial assistance awarded by Morgan to students participating in the Morgan–Sage truck driving program from July 1, 1993 through June 30, 1994 was unauthorized and ordered Morgan to reimburse the Department $30,531.00 for unauthorized Pell Grants plus $9,367.00 in estimated losses to the Department for defaulted Stafford and SLS loans and $1,382.00 in interest subsidies and special allowances paid by the Department for these unauthorized loans.

### II. *Standard of Review.*

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, governs review of the informal agency decision at issue in this case. The Secretary's decision may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2). The agency's action is "entitled to a presumption of regularity" and its underlying findings are "entitled to deference." *Franklin Sav. Ass'n v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1141 (10th Cir.1991). The action must be upheld "if [the agency] has articulated a rational basis for the decision and has considered relevant factors." *Colorado Dep't of Social Servs. v. United States Dep't of Health & Human Servs.,* 29 F.3d 519, 522 (10th Cir.1994). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Aylett v. Secretary of Hous. & Urban Dev.,* 54 F.3d 1560, 1561 (10th Cir. 1995).

### III. *Issues Raised on Appeal.*

The following are Morgan's arguments on appeal and my rulings on each.

A. *The ALJ based his decision on an incorrect finding of fact when he found that the Limon facility was not accredited.*

Morgan asserts the ALJ based his decision on the incorrect finding that it was not accredited. According to Morgan, it was fully accredited by the North Central Association of Colleges and Schools as an auxiliary facility and therefore it was not required to obtain prior approval from the Department at the time of the Limon program's inception.

The record shows the lack of accreditation was not the basis for Morgan's liability. "Even if this were true, it is entirely reasonable for [the Department] to be notified of the opening of additional locations to be able to review the program application to ensure

that the program is fully accredited and authorized at the additional location." (R. at 48.) Liability was based on Morgan's failure to notify "the Secretary of its operation of the additional location at the Limon Correctional Facility as required by 34 C.F.R. §§ 600.30 (1991, 1992, 1993) and 600.32 (1992, 1993)." (R. at 52.) Accordingly, Morgan's argument is without merit.

B. *The regulations did not require prior approval for all additional locations.*

Morgan argues the Departmental eligibility regulations did not clearly require that it advise the Department of the addition of the Limon site and/or that any such requirement was expressed only in 34 C.F.R. § 600.32, cited by the ALJ but not in effect at the time Morgan began providing educational instruction at Limon.

Morgan's reliance on the ALJ's citation of § 600.32 is misplaced as he did not view the eligibility requirement at issue, namely prompt application to the Department upon opening of a new location, as having been imposed by § 600.32. He referred to other pertinent eligibility regulations extant since 1988, viz., 34 C.F.R. § 600.10(b)(3) (1992–93) and § 600.30(a), (d) (1992–93), and commented that "[t]he addition of section 600.32 makes the obvious more obvious." (R. at 2 n. 2.)

C. *The ALJ's decision was inconsistent with the Department's policies which provided an operational definition of "additional program" upon which Morgan relied.*

■ Morgan maintains the decision of the ALJ, finding that it was operating an additional location without prior approval, is a casualty of the Department's disorder and inability to give institutions of higher education a bright line by which to determine when an auxiliary facility was an "additional location" requiring separate eligibility.

In asserting these vague allegations, Morgan referred in oral argument to the "Moore letter" and the "Hudson letter" which are discussed *infra.* Other than these specific references, the complaint seems to be about desultory comments and opinions of Depart-

ment employees. No such inefficiency on the part of the Department excused Morgan from its regulatory duty to notify the Department of the existence of the Limon operation.

D. *The ALJ erred in finding that Morgan was required to obtain prior approval from the Department for courses offered at Limon.*

■ Morgan argues the finding that it was required to obtain prior approval was predicated on Limon being a separate and distinct site, when, in fact, it was an auxiliary site which did not require prior approval. In this regard it relies on Colorado Revised Statutes § 23–1–109 (1988) which required Morgan to provide educational opportunities to its entire service area, which includes Limon. It states Limon was therefore merely an extension of Morgan's main campus.

The fact that under Colorado state law Morgan may have been required to establish the Limon operation did not authorize Morgan to support that Limon location with disbursements of federal funds for which Limon was not eligible under federal law. The ALJ's determination in this regard has a rational basis.

E. *The ALJ's decision is inconsistent with prior Department policies and other decisions.*

■ Morgan argues the Department has established a policy against assessing liability for aid awarded for students who never completed their certificate or program, relying on correspondence between Region VII Institutional Review Specialist William R. Hudson and Pratt Community College President, William Wojciechowski.

The ALJ observed the Hudson letter "does not establish any kind of national policy, but is fact specific to the case being addressed by the letter." (R. at 48.) He made the distinction between the program in question in the Hudson letter, which was not designed so that the student could complete the program at the additional locations (although some students did complete it during a short period when it was inadvertently possible), and the Morgan situation, where all of the stu-

dents enrolled at Limon were in certificate or degree programs which they could complete at that facility. *Id.* The ALJ commented that allowing only those students who do not complete the program to receive federal aid would be to "reward failure." *Id.* The ALJ has articulated a rational basis for the distinction drawn between the two programs, taking relevant factors into account.

Morgan further asserts the Department's policy regarding additional locations, as expressed in the letter from Lois Moore, Chief, Division of Eligibility and Certification, to Leigh Manasevit in 1989 and ED Form E40–34P, Application for Institutional Eligibility and Certification, is inconsistent with the position argued by the Secretary in order to find Morgan in violation of the regulations.

The ALJ found the Limon program was "more than the 'auxiliary' classroom contemplated by the Moore letter and ED–40–34P." (R. at 46–47.) This finding has a rational basis and is supported by relevant evidence such that a reasonable mind might accept it as adequate to support the ALJ's conclusion.

F. *Requiring Morgan to remit all federal Pell Grant funds for the students at Limon is inconsistent with the actual harm of the violation.*

██ Morgan urges me to overturn the Secretary's decision because neither the Department nor any of the students were harmed by the Limon violation and therefore, to require Morgan to reimburse the Department for any of the Pell Grant funds for the Limon students, was an abuse of discretion.

The federal dollars spent on the grants, deferred interest, and other federal costs incurred as a result of Morgan's illegal award of Title IV funds should not have been spent at Limon. They could have been spent on educational programs falling within the lawful scope of the Title IV programs. Therefore, the remedy applied by the ALJ, requiring Morgan to make the Department whole by reimbursing funds Morgan had no right to accept, has a rational basis.

G. *The ALJ incorrectly found that Morgan surrendered control of the truck-driving program to Sage.*

██ Contrary to the ALJ's finding that it had surrendered control of the truck-driving program to Sage, Morgan asserts it maintained approximately eighty percent control over the program. It states Sage provided the material (trucks) and held responsibility for the materials while Morgan retained educational control. Accordingly, Morgan argues, 34 C.F.R. § 600.9 did not apply and it should not have been assessed any liability.

The eligibility requirement prohibited Morgan from contracting out more than fifty percent of its truck-driving program, and required Morgan to have obtained specific accrediting agency approval for contracting out more than twenty-five percent. *See* 34 C.F.R. § 600.9 (1992–93). Morgan did not purport to have received the requisite accrediting agency approval for the contract. The terms of the contract support the Secretary's finding that Morgan violated the regulation; Sage provided in excess of the twenty-five percent of the truck-driving program, including most or all of the "academic components." Moreover, contrary to Morgan's assertion, the ALJ did not rely exclusively on the terms of the contract, but looked beyond it and found the evidence demonstrated that the program was run almost totally by Sage. (R. at 49–50; *see also* Trans. Oral Argument Aug. 31, 1995, R. at 495–500.)

The Secretary considered relevant factors and articulated a rational basis for the conclusion that Morgan violated the contracting-out eligibility requirement.

IV. *Conclusion.*

The Secretary's decision is neither arbitrary nor capricious, nor unsupported by substantial evidence. Accordingly, I AFFIRM.